Darrell L. Cochran
Patrick A. Brown
Pfau, Cochran, Vertetis & Amala, PLLC
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799
darrell@pcvalaw.com
pbrown@pcvalaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAMBRIA HORNE, an individual,

    Plaintiff,

vs.

SEATTLE CITY LIGHT, CITY OF SEATTLE, a municipality; DAWN LINDELL, an individual; BRIAN BELGER, an individual; DAVID MAXFIELD, an individual; JOHN HANSEN, an individual,

    Defendants.

No. 2:25-cv-1606

**COMPLAINT FOR CIVIL RIGHTS VIOLATION**

Demand for Jury Trial

COMES NOW Plaintiff, by and through her attorneys Darrell L. Cochran and Patrick A. Brown of Pfau Cochran Vertetis Amala PLLC, and brings a cause of action against Defendants and alleges the following:

**I.    INTRODUCTION**

1. Far too many women face gender inequality, discrimination, harassment, suppression, and retaliation, particularly in workplaces dominated by men. No woman should sacrifice her emotional wellbeing and remain silent simply because a male dominated field refuses to treat women equally. Everyone has a right to fair and equal treatment, and no women should be vilified for reporting disparage, unequal treatment. Despite the "Me too" movement,

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT

Page **1** of **19**



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

women continue to experience discrimination, harassment, and retaliation in the workplace daily. This is a shocking story of retaliation and exacerbation of trauma in the workplace that haunts Cambria Horne, a pioneering woman working at Seattle City Light: she brought forward a horrific workplace sexual assault and harassing environment, then was promised by Seattle City Light that it valued her and would protect her but, instead, outed her as the complainant who identified workplace toxicity and its perpetrators. Seattle City Light then left her exposed to amplified discrimination, harassment, and hostility that exacerbated and created new damages.

2.     An independent investigation confirmed the history of sexual harassment, discrimination, retaliation, and hostility first brought to light by Cambria, and Seattle City Light published these findings without regard to the further abusive environment it would create for Cambria. Seattle City Light's supervising employees retaliated against Cambria for reporting workplace misconduct and concocted bogus stories that Cambria had engaged in her own sexual harassment. Seattle City Light then placed Cambria on administrative leave.

3.     This is an action based on discrimination and retaliation in violation of 42 U.S.C. § 1983 and Washington Law Against Discrimination ("WLAD"), as well as breach of contract in violation of an underlying confidential settlement agreement, which was entered into on September 27, 2022 ("Settlement Agreement") between Cambria Horne and Defendants Seattle City Light and City of Seattle. This also is an action against Defendants Dawn Lindell, Brian Belger, Dave Maxfield, and John Hansen who were all Seattle City Light employees and acting under color of law when their actions and inactions violated Cambria's constitutional and statutory rights. Collectively, all Defendants are identified as "Defendant Seattle City Light".

4.     Defendant Seattle City Light's discriminatory conduct and retaliation, including by Defendants Dawn Lindell, Brian Belger, Dave Maxfield, and John Hansen, arise out of Cambria's previous tort claim filed in 2022 (2022 tort claim) for sexual assault, sexual

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

harassment, and gender discrimination against Seattle City Light. After a lengthy investigation, which substantiated Cambria's report of rape by a co-worker, Cambria and Defendant Seattle City Light reached a settlement. As part of the settlement, Seattle City Light promised Cambria workplace protection, career advancements she should have received years ago, and a healthy work environment. Cambria expressed concerns about remaining employed with Seattle City Light because she feared increased harassment and retaliation. Seattle City Light dismissed Cambria's concerns and guaranteed her protection and positive changes in the workplace.

5. Cambria's 2022 tort claim and settlement triggered a 2.5-year-long investigation into Seattle City Light's sexually toxic workplace environment. As part of the investigation, Seattle City Light insisted on Cambria's participation in "confidential" interviews because it considered her as one of the very few credible sources in Seattle City Light. Cambria repeatedly expressed concerns about the ramifications she would face for reporting her co-workers' workplace misconduct. Although Cambria was promised total anonymity during the investigation, her identity was leaked almost immediately, including disclosure of information about her previous settlement, which resulted in Cambria's co-workers and superiors retaliating against her, treating her differently than her peers, harassing her, and fabricating stories that she had engaged in inappropriate workplace behavior.

6. Despite her concerns, Seattle City Light insisted on Cambria's participation in interviews. Cambria participated in the 2.5-year-long investigation as a whistleblower, which resulted in several Seattle City Light employees' termination, discipline, and admonishment. Cambria's identity as the whistleblower was leaked, and she became the target of further retaliation and discrimination, creating an even more hostile work environment. Cambria repeatedly reported to Seattle City Light that she was being targeted and retaliated against for being a whistleblower; however, Seattle City Light continued to turn a blind eye.

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

7.  In April 2025, the investigation concluded, and Seattle City Light released a 20-page executive summary detailing the investigation, interviews, and findings. Because of the egregious findings, Seattle City Light shared its investigatory findings with the Seattle City Council on April 18, 2025, and received harsh criticism from Seattle City Council.

8.  After Seattle City Light released its investigatory findings, Seattle City Light continued to retaliate against Cambria, making it nearly impossible for her to continue working. Consequently, Cambria filed a second tort claim ("2025 tort claim") for retaliation, discrimination, breach of contract, and constructive termination, which Seattle City Light received on May 8, 2025, at 1:51 pm. Within minutes of receiving Cambria's 2025 tort claim, Seattle City Light accused Cambria of sexually harassing a co-worker and placed her on administrative leave, resulting in Cambria losing significant wages. To date, Cambria remains on administrative leave, and she has lost approximately $40,000 in wages.

9.  Cambria's claim for breach of contract arises out of Seattle City Light's violation of the Settlement Agreement when it failed to protect her from a hostile work environment and when it disclosed the terms of the Settlement Agreement to her co-workers. After Cambria filed her 2022 tort claim for the sexual assault by Damien Mims, she reached a confidential settlement agreement with Defendant Seattle City Light, which required Seattle City Light to provide protective measures, so she could continue her employment free of any discrimination, gender barriers, and retaliation for reporting sexual assault, sexual harassment, discrimination, and other workplace safety concerns. Defendant failed to uphold its end of the bargain, breached the 2022 settlement agreement when it leaked the settlement amount, and tolerated ongoing workplace harassment, discrimination, and retaliation.

10. As a result of Defendant's deliberate indifference and conscious disregard for her safety and well-being, Cambria suffered significant emotional trauma, and she was constructively discharged because the hostile work environment precluded Cambria from

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **4** of **19**

returning to a healthy working environment. Additionally, Cambria has suffered a significant wage loss because she was placed on administrative leave, and she will not be able to return to work due to the ongoing toxic, hostile work environment causing her significant emotional distress.

11.     Cambria brings this lawsuit pursuant to 42 U.S.C. § 1983 to recover the damages resulting from the discrimination and retaliation she experienced, including economic and non-economic damages and punitive damages, for which all Defendants are severally and jointly liable for their actions and inactions under the color of law and for their acts with deliberate indifference and/or conscious disregard that deprived Cambria of her constitutional and statutory rights.

## II.     PARTIES

12.     <u>Plaintiff Cambria Horne.</u>: At all times material, Cambria was a female Seattle City Light employee. She currently resides in Seattle, King County, Washington.

13.     <u>Defendant Seattle City Light, City of Seattle:</u> City of Seattle is a municipal corporation validly formed and exists under the Constitution and laws of the State of Washington.

14.     <u>Defendant Dawn Lindell:</u> At all relevant times, Lindell was the Chief Executive Officer of Seattle City Light and was acting under the color of law when she discriminated and retaliated against Cambria. She currently resides in Seattle, King County, Washington.

15.     <u>Defendant Brian Belger:</u> At all relevant times, Belger was the Director of Seattle City Light and was acting under the color of law when he discriminated and retaliated against Cambria. He currently resides in Kingston, Kitsap County, Washington.

16.     <u>David Maxfield.</u> At all relevant times, Maxfield was a Crew Chief at Seattle City Light and was acting under the color of law when he discriminated and retaliated against Cambria. He currently resides in Kenmore, King County, Washington.

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

17. <u>John Hansen</u>. At all relevant times, Maxfield was a Network Crew Chief at Seattle City Light and was acting under the color of law when he discriminated and retaliated against Cambria. He currently resides in Stanwood, King County, Washington.

### III.  JURISDICTION AND VENUE

16. <u>Tort Claim.</u> Sixty days have elapsed since the City of Seattle received a standard tort claim.

17. <u>Jurisdiction.</u> Subject matter jurisdiction is predicated on federal question jurisdiction, 28 U.S.C. § 1331 and § 1343 as Plaintiff brings claims under 42 U.S.C. § 1983. Plaintiff's state-law claims form part of the same case and controversy and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. §1367.

18. <u>Venue.</u> Venue is proper in this Court under 28 U.S.C. § 1391(1)(b), since all Defendants reside, or resided, in this district, and the events giving rise to this action occurred in this district, in King County, WA.

### IV.  FACTS

**A. Seattle City Light Background.**

19. Seattle City Light is a department that was created by the City of Seattle in or around 1910, and it provides electricity to over 400,000 customers in the City of Seattle and eight adjacent jurisdictions within King County, Washington. Seattle City Light hires very few female employees, and it fails to retain the few that it hires because it has a toxic, discriminating environment towards females that drives them away. Seattle City Light has a longstanding history of tolerating sexual and gender discrimination, sexual harassment, and retaliation against female employees. For decades, female Seattle City Light employees have been victims of sex and gender discrimination, sexual harassment, and retaliation.

20. In or around 2005, Cambria was hired by the City of Seattle as an Apprentice Water Pipe Fitter for Seattle City Light. In or around 2008, she was hired as a Cable Splicer

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **6** of **19**

apprentice. Shortly thereafter, her supervisors insisted that she join the "BUY" celebration, which was a Seattle City Light tradition for newly promoted employees. Crew members would post flyers across job sites to invite other employees to the "BUY" celebration. The "BUY" tradition was still ongoing in September 2022:







COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654



21. In 2011, Cambria was elevated to a third-year apprentice and was manipulated into joining her male work co-workers for the "BUY" tradition to avoid unfair treatment. There, she was given alcohol until she became inebriated and unable to travel home independently. Cambria's supervisor at the time, Damien Mims, transported Cambria into his vehicle, drove her to his home, and raped her.

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **8** of **19**

22. Cambria was devastated, emotionally distraught, and embarrassed. She feared others would blame her or not believe her because Mims was her superior. Cambria feared that if she spoke up, she would jeopardize her career in a male-dominated field.

23. Cambria learned that Mims may have been arrested on the jobsite in 2010 for sexual assault allegations, although she did not confirm the rumor. Nonetheless, she attempted to avoid him because of her concerns that he was a sexual predator. However, her attempts to avoid him were futile. Mims threatened, harassed, bullied, and intimidated her for years after he raped her.

24. In 2014, Seattle City Light assigned Cambria to Mims' crew. Terrified, she contacted Defendant Brian Belger, the Network, Substations, and Shops Director; and asked if she could be assigned to a different crew. She explained to Belger that Mims raped her in 2011 after the work organized "BUY" celebration. Belger ensured Cambria that she would not be assigned to Mims' crew. Shortly thereafter, Belger learned that Mims wanted a romantic relationship with Cambria. Despite this knowledge, Belger failed to report Mims, which was a violation of Seattle City Light's policies.

25. In late 2019, Cambria was assigned to Defendant John Hansen's crew. Hansen was a Cable Splicer Crew Chief, and Cambria disclosed to Hansen that Mims raped her in 2011. Hansen **_praised_** her for "**_moving forward_**" instead of reporting the rape. Hansen confirmed Cambria's suspicion of the Seattle City Light's work culture discouraging reports of rape or sexual harassment because of its "good old boys club." Not once did Hansen report Mims for raping Cambria, nor did he confront Mims or take any action to protect her from future harm.

### B. Mims' Continued to Harass and Retaliate Against Cambria.

26. Mims learned that Cambria told other supervisors about his sexually aggressive behaviors and began retaliating against her. Mims secretly and overtly communicated with Seattle City Light administration and co-workers with an end towards preventing Cambria from

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **9** of **19**

being promoted. Mims also made disparaging comments about her to co-workers and filed several unjustified grievances against her in less than one month with Dawn Nelson, the Electrical Construction & Maintenance Supervisor. Ms. Nelson advised Mims that his complaints were unwarranted because Cambria had not committed any wrongdoing. Ms. Nelson then caught Mims going through Cambria's employment file without permission. On April 27, 2021, Ms. Nelson had a meeting with Mims and advised him that he violated policies by going through Cambria's personnel file and that his conduct was indicative of him "singling someone out." Despite this, Seattle City Light continued his employment.

### C. 2021/2022 Investigation.

27. In April 2021, Cambria disclosed to Erica Gauer, the People and Culture Business Partner, that she was raped and harassed by Mims. The matter was transferred to Tara Parker, attorney and investigator with Ogden Murphy Wallace, PLLC. Ms. Parker investigated the allegations for several months, which included interviewing various Seattle City Light employees and reviewing various City of Seattle policies and procedures, including City of Seattle's Personnel Rules 1.1.2, 1.1.3, 1.1.5, and 8.1; Seattle City Light Department Policy & Procedure 500 P II 233; Seattle City Light's Workplace Expectations of Mutual Respect for All Employees; and Seattle City Light's Workplace Expectations of Mutual Respect for Supervisors & Managers. Mims refused to participate in the investigation.

28. On January 21, 2022, Ms. Parker released an investigative report, which concluded that various City of Seattle/Seattle City Light policies were violated and the following substantiated allegations:

> The preponderance of the evidence supports the finding that, in 2011, Mr. Mims took the heavily inebriated Ms. Horne to his home against her wishes and had intercourse with her when she did not have the capacity to consent. Ms. Horne credibly detailed blacking out in Mr. Mims' car after telling him she wanted to go home, waking up undressed, perceiving he had intercourse with her while she was unconscious, and tearfully asking him if he used contraceptives.

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT

Page 10 of 19


909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

> [T]he preponderance of the evidence supports a finding that Ms. Horne endeavored to keep her allegations from being reported and only shared information with Mr. Belger and Mr. Hansen when she felt it was absolutely necessary in order to get protection from them and minimize contact with Mr. Mims.
>
> Ms. Nelson confirmed that Ms. Horne's reluctance to complain was reasonably related to her vulnerable position as an apprentice and the "good old boys" culture at their workplace. Nelson further confirmed that Mr. Mims can be intimidating and threatening. Moreover, Ms. Horne's perception that her superiors would not take the assault as seriously as they should was confirmed by implication when neither Mr. Belger nor Mr. Hansen reported the allegations to Employee Relations.
>
> Mr. Belger, Mr. Hansen, Ms. Nelson, Mr. Eastlick, and Mr. White all indicated by their statements that (1) the believed Ms. Horne to a truthful person; (2) they believed Ms. Horne was afraid of Mr. Mims due do unwelcome sexual conduct in the past; and (3) they believed Mr. Mims was capable of harming Ms. Horne.
>
> The information gathered in this investigation regarding Ms. Horne's claim that Mr. Mims bullied, intimidated, and threatened her in 2010 and 2021 supports a finding in the affirmative.
>
> The preponderance of the evidence supports a finding that Mr. Mims was bullying, intimidating, and threatening Ms. Horne by surreptitiously obtaining her work-related records and making claims, through formal grievances and statements to colleagues, that she was improperly performing her duties.

**D.  Plaintiff's 2022 Tort Claim and Settlement.**

29.     In 2022, Cambria filed a tort claim for the sexual assault by Mims. Rather than litigate, Seattle City Light chose to engage in early resolution, and Cambria and Seattle City Light settled for a confidential amount. At mediation, Cambria reluctantly disclosed workplace misconduct by staff including (1) drinking and being intoxicated at work, (2) sharing pornography, (3) sexual harassment, (4) gender discrimination, and (5) retaliation because she feared further discrimination and retaliation. Seattle City Light assured Cambria that she would be protected and that her reports would be anonymous.

30.     After Cambria and Seattle City Light settled, Seattle City Light breached the settlement agreement by disclosing the settlement amount to Cambria's co-workers. Cambria

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **11** of **19**

was questioned by co-workers, who knew how much she settled for. Cambria neither confirmed nor denied the settlement amount and declined to discuss anything about her settlement.

### E. 2023 – 2025 Seattle City Light Network Investigation.

31. After Cambria and Seattle City Light settled in 2022, Seattle City Light immediately launched an investigation into Cambria's reported workplace misconduct. Cathryn Dammel with Dammel Law PLLC led the investigation and published a 20-page investigative Executive Summary on March 11, 2025. Ms. Dammel concluded:

> I generally found that partaking in a culture of drinking and sexism was required for entry into the Network's "good old boys' club." Against this backdrop, some employees found themselves outside the "clique" led by an influential "cabal." If you didn't "fall with the group," you got talked about on the dock. Drinking in Network had been culturally normalized and, if employees did not acquiesce, they were not accepted. There was intense pressure to join in, and many wanted to fit in.
>
> Importantly, if employees resisted or were shunned by the "brotherhood," there were economic and social consequences. Witnesses believed, for example, as I do, that certain individuals in the "brotherhood" controlled access to overtime opportunities.
>
> Some in Network management rose through the ranks engaged in the drinking and misogynistic culture and continued to be part [of] it. Six of the forty subjects in this investigation were Crew Chiefs at the time of substantiated allegations.
>
> Among them, one Crew Chief, called the "gang leader," instilled fear in those who rejected, or tried to reject, the drinking culture. He pressured one Apprentice to gift him with a bottle of alcohol in exchange for his evaluation. He accused another of being a "snitch" if he did not join in the drinking. Another Crew Chief, in a not-so-subtle way, let a new employee know what he expected and the consequences for not living up to his expectations – he expected a bottle of alcohol as a "paperweight" or the Apprentice's evaluation paperwork would "fly away."
>
> A few Crew Chiefs and Cable Splicers also wielded their power to exploit less senior female employees. Some women felt compelled to endure what one called a "hazing" environment in order to protect their City Light careers. They were subjected to unwelcomed, "high school-like," demeaning behavior

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT

Page 12 of 19



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

and intimidation by "predator[s]" who left them feeling unsafe and powerless. Two were physically assaulted at work. One experienced uninvited intrusions into her home and personal life and was bullied into participating in conduct she felt defenseless to reject.

Coworkers' pleas to stop the harassing behavior went unheeded. One female employee learned to navigate around it by putting herself at arms-length from a Crew Chief – literally, by finding a physical work location high enough to escape his touching and groping. Another woman sometimes played along, calling it "being in the game" and being groomed to believe she would be accepted as "one of the guys."

These female employees' reactions were understandable, given the power imbalance they encountered. One Crew Chief was not just their superior but the influential leader of the Network "clique." Though the workplace behavior "dimmish[ed]" women and put them on a "lower pedestal," the women learned that their choices were to accept the behavior or be ostracized.

32. Ms. Dammel interviewed Cambria several times and found her credible. After Ms. Dammel released the Executive Summary, Seattle City Light continued to retaliate against Cambria. Cambria became an outcast, her co-workers ignored her work calls, and her co-workers accused her of inappropriate behavior in the workplace. Coupled with the disclosure of Cambria's 2022 settlement amount, the hostile work environment, and the never-ending retaliation, Cambria was unable to complete her tasks without experiencing emotional distress.

33. Cambria repeatedly reported retaliation, but Seattle City Light did nothing. Consequently, on May 5, 2025, Cambria filed her 2025 tort claim for retaliation, discrimination, breach of contract, and constructive termination, which Seattle City Light received on May 8, 2025, at 1:51 pm. Within minutes of receipt of Cambria's 2025 tort claim, Seattle City Light accused Cambria of sexual harassment and placed her on administrative leave. A group of Cambria's male co-workers whose "friends" were terminated because Cambria reported their workplace misconduct fabricated sexual harassment allegations against Cambria. To date, Cambria continues to remain on administrative leave and has lost over $40,000 in overtime pay.

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 13 of 19

**F.  Damages.**

34.  As a direct and proximate cause of Defendant Seattle City Light's actions and inaction, Plaintiff suffered, and continues to suffer indefinitely, from a variety of economic and non-economic damages.

V.    CAUSES OF ACTION

COUNT I
CIVIL RIGHTS VIOLATIONS
AS TO ALL DEFENDANTS
(42 U.S.C. § 1983)

35.  <u>Civil Rights Violation.</u> Based on the paragraphs set forth and alleged above, Defendant Seattle City Light and its agents, servants, and employees, including Defendants Lindell and Belger, who were acting under color of law, deprived Plaintiff of rights secured by the U.S. Constitution and laws of the United States in violation of 42 U.S.C. § 1983 when they discriminated against Plaintiff on the basis of her gender in violation of the Equal Protection Clause of the Fourteenth Amendment, and Defendants treated Plaintiff differently than similarly situated employees outside of Plaintiff's protected class without any rational basis, and Defendants treated Plaintiff differently with discriminatory intent or deliberate indifference to Plaintiff's protected rights.

36.  Further, Plaintiff engaged in a protected activity by reporting sex and gender discrimination, harassment, and other workplace misconduct, and Defendants violated Plaintiff's constitutional and statutory rights when it retaliated against Plaintiff by subjecting her to adverse employment actions, including but not limited to harassment, hostile work environment, and denial of promotions, and as a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages for which Defendants are liable.

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT

Page 14 of 19

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

**COUNT II**
**DISCRIMINATION**
**AS TO ALL DEFENDANTS**
**(Washington Law Against Discrimination)**

37. <u>Washington Law Against Discrimination.</u> Based on the paragraphs set forth and alleged above, the female Plaintiff was a member of a protected class when Defendant and/or its agents or employees committed acts that directly or indirectly resulted in discrimination of the female Plaintiff by treating her in a manner different to the treatment provided to persons outside the Plaintiff's protected class, including but not limited to lost job opportunities, unwanted sexual harassment, and disparage treatment, and such violative acts toward the female Plaintiff were objectively discriminatory and subjectively perceived as discriminatory by Plaintiff, and the female Plaintiff's protected status was a substantial factor that caused the distinctive, restrictive, and/or discriminatory treatment by Defendants and/or its agents, all of which was contrary to the laws of Washington set forth under RCW 49.60 et seq., and all of which proximately caused the female Plaintiff to suffer damages, for which Defendant is liable.

**COUNT III**
**RETALIATION**
**AS TO ALL DEFENDANTS**
**(RCW 49.60 *et seq.*)**

38. <u>Retaliation.</u> Based on the paragraphs set forth and alleged above, Plaintiff participated in a protected activity when she reported discrimination, sexual harassment, sexual assault, retaliation, and other work place misconduct occurring within Seattle City Light, including discrimination, sexual harassment, sexual assault, and retaliation she experienced, and because Plaintiff engaged in a protected activity, Plaintiff further experienced discrimination and retaliation, including but not limited to creating an adversary and hostile work environment, preventing Plaintiff from certain job opportunities and overtime, attempting to silence her, attacking her character, and placing her on administrative leave, and these acts and inactions by Defendant constitute retaliation against a whistleblower in violation of

COMPLAINT FOR CIVIL RIGHTS VIOLATION, EMPLOYMENT DISCRIMINATION, RETALIATION, AND BREACH OF CONTRACT

Page 15 of 19

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Washington's Law Against Discrimination, which proximately caused Plaintiff economic and non-economic damages for which Defendant is liable.

## COUNT VI
## CONSTRUCTIVE TERMINATION
## AS TO ALL DEFENDANTS
### (Washington Common Law)

39. <u>Constructive Termination.</u> Based on the paragraphs set forth and alleged above, Plaintiff is being constructively terminated because the hostile work environment and retaliation she is experiencing at Seattle City List has made it intolerable for Plaintiff to continue to perform her roles and responsibilities, which is tantamount to constructive discharge, and Defendant's actions and inactions proximately caused Plaintiff damages, for which Defendant is liable.

## COUNT V
## COMMON LAW NEGLIGENCE
## AS TO ALL DEFENDANTS
### (Washington Common Law)

40. <u>Negligence.</u> Based on the paragraphs set forth and alleged above, Defendant had a duty to refrain from grossly negligent, or alternatively, negligent acts and omissions, a duty that included providing a safe working environment free of discrimination and retaliation, a duty that included the responsibility to investigate concerns and complaints, as well as a duty to refrain from grossly negligent, or alternatively, negligent acts and omissions in the hiring, training, and supervision of its agents, and Defendant's multiple failures in its duties owed proximately caused Plaintiff to suffer damages for which Defendant is liable.

## COUNT VI
## BREACH OF CONTRACT
## AS TO DEFENDANT SEATTLE CITY LIGHT
### (Washington Common Law)

41. <u>Breach of Contract.</u> Based on the paragraphs set forth and alleged above, Defendant entered into a settlement agreement with Plaintiff, which prohibited either party from



disclosing the settlement amount that the parties agree to on September 27, 2022, and Defendant breached the contract by failing to comply with the terms of the settlement agreement, resulting in damages to Plaintiff in an amount to be determined by a trier of fact.

### COUNT VII
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### AS TO ALL DEFENDANTS
### (Washington Common Law)

42. <u>Negligent Infliction of Emotional Distress.</u> Based on the paragraphs set forth and alleged above, Defendant's conduct constituted negligent infliction of emotional distress, and Defendant is liable for damages proximately caused as a result.

### COUNT VIII
### OUTRAGE
### AS TO ALL DEFENDANTS
### (Washington Common Law)

43. <u>Outrage.</u> Based on the paragraphs set forth and alleged above, Defendant intentionally and/or recklessly caused severe emotional distress to Plaintiff due to its extreme and outrageous conduct, as more fully described above, that went beyond all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community, constituting the tort of outrage for which Defendant is now liable.

### COUNT IV
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AS TO ALL DEFENDANTS
### (Washington Common Law)

44. <u>Intentional Infliction of Emotional Distress.</u> Based on the paragraphs set forth and alleged above, Defendants engaged in extreme and outrageous conduct and acted in a manner which was intentional and reckless, and such conduct directly caused Plaintiffs emotional distress for which Defendants are liable.

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT

Page **17** of **19**



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## VI.  RESERVATION OF RIGHTS

45.  <u>Reservation of Rights.</u> Plaintiff reserves the right to assert additional claims as may be appropriate following further investigation and discovery.

## VII.  JURY DEMAND

46.  <u>Jury Demand.</u>  Plaintiff demands that this action be tried before a jury.

## VIII.  PRAYER FOR RELIEF

47.  <u>Relief.</u> Plaintiff respectfully requests the following relief:

A.  That the Court award Plaintiff appropriate relief, to include all special and general damages established at trial;

B.  That the Court award costs, reasonable attorneys' fees, and statutory interest under any applicable law, or other grounds in equity, including 42 U.S.C. § 1983 and Washington Law Against Discrimination;

C.  That the Court award punitive damages as authorized by 42 U.S.C. § 1983;

D.  That the Court award pre-judgment interest on items of special damages;

E.  That the Court award post-judgment interest;

F.  That the Court award Plaintiff such other, favorable relief as may be available and appropriate under law or at equity; and

G.  That the Court enter such other and further relief as the Court may deem just and proper.

COMPLAINT FOR CIVIL RIGHTS VIOLATION, EMPLOYMENT DISCRIMINATION, RETALIATION, AND BREACH OF CONTRACT

Page **18** of 19



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

SIGNED this 22nd day of August, 2025.

PFAU COCHRAN VERTETIS AMALA PLLC

By: /s/ Darrell L. Cochran
Darrell L. Cochran, WSBA No. 22851
Attorneys for Plaintiff


By: /s/ Patrick A. Brown
Patrick A. Brown, WSBA No. 56627
Attorneys for Plaintiff

COMPLAINT FOR CIVIL RIGHTS VIOLATION,
EMPLOYMENT DISCRIMINATION,
RETALIATION, AND BREACH OF CONTRACT



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654